UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PANKAJ MERCHIA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 24-2701 (RC) |
| SHEILA HASTINGS AREF, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff Pankaj Merchia, appearing *pro se*, sues a resident of Virginia for defamation and related claims. Pending is Defendant's Motion to Dismiss for lack of subject-matter jurisdiction, lack of personal jurisdiction, and insufficient service of process. Although Plaintiff requested and was granted two extensions of time over Defendant's objections, he has not responded to Defendant's motion. Instead, in a motion filed the day *after* his latest deadline of July 7, 2025, Plaintiff requested yet another time extension. Finding no basis to prolong the proceedings, the Court will grant Defendant's motion to dismiss and deny Plaintiff's third motion for an extension of time.[1]

**II. BACKGROUND**

**A. Factual Backdrop**

Plaintiff is "a physician, scientist, engineer, and entrepreneur." Compl., ECF No. 1 at 2.

---

[1] *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (recognizing the courts' inherent authority to "manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases[.]").

He is facing charges in the U.S. District Court for the District of Massachusetts of health care fraud, money laundering, conspiracy to defraud the Internal Revenue Service, and tax evasion. *Merchia v. Harvard Pilgrim Healthcare, Inc.*, No. 23-3913 (RC), 2024 WL 5186612, at *1 (D.D.C. 2024) (Contreras, J.) (citing *United States v. Merchia*, 2024 WL 1678152, at *1 (D. Mass. 2024)). The events leading to the criminal prosecution form the basis of this suit and "multiple civil lawsuits" Plaintiff has filed in this Court "in connection with the Indictment." Def.'s Mem., ECF No. 7-1 at 15-16 (collecting cases).

Here, Defendant is Plaintiff's former patient who allegedly "falsely accused him of healthcare fraud." Compl. at 2. According to Plaintiff, Defendant "told her insurance company that claims submitted under Plaintiff's name for the lease/rental of CPAP equipment that she had in her possession on the dates of the claim were fraudulent," *id.*, and "falsely wrote to a consortium of insurance companies called the 'IFB' and law enforcement that claims for services submitted under Plaintiff's name to patients were 'not supported [as having been delivered]' even though patients had informed Defendant that the services had been received." *Id.* at 4 (brackets in original). Defendant's unrefuted facts recounted below lend context and clarity to Plaintiff's allegations.

In April 2009, Defendant participated in a sleep study at Plaintiff's practice in Reston, Virginia, which resulted in her receiving "a bilevel positive airway pressure (BIPAP) machine." Def.'s Aff., ECF No. 7-2 at 1 ¶ 3. After receiving the machine, Defendant "had approximately 4-5 additional appointments" where she "received new hoses, face masks and filters" for the machine. *Id.* ¶ 4. Defendant "did not continue with appointments" because she left her employing company due to staff reductions and was no longer covered by the company's health insurance. *Id.* Approximately eight years later, "in or about 2017-2018," Defendant's BIPAP

machine "ceased working," which prompted her to contact her "health insurance to see if a new machine or new sleep study would be covered under [her] insurance" with her current employer. *Id*. ¶ 5. When Defendant logged onto her account, she "saw over . . . $100,000.00 USD worth of claims from Plaintiff 'in review.' " *Id*. Although Defendant had not visited or contacted Plaintiff's office nor "received a new BIPAP machine or supplies since 2010 or 2011," each claim "was associated with a fairly recent date of a purported visit . . . to Plaintiff's Office." *Id*.

Approximately three years later, in June 2022, Defendant spoke by telephone with "an investigator with the Insurance Fraud Bureau of Massachusetts ("IFB")." *Id*. ¶ 6. The investigator "explained [that] he was investigating Plaintiff criminally[,]" had obtained Defendant's "information as a former patient of Plaintiff's[,]" and "wanted to talk about [her] experience." *Id*. Defendant "cooperated with his investigation." *Id*. As a result, Defendant was subpoenaed to testify before a grand jury in Boston, Massachusetts. Understanding that she "was under court order to comply with the subpoena," Defendant "flew to Boston and testified on October 20, 2022." *Id*. ¶ 7.

Defendant attests that contrary to the complaint's allegations, she (1) "did not initiate [any] contact with the IFB regarding the services and machinery" she received, (2) has never "written to any other law enforcement organization" or "any insurance companies" regarding such matters, (3) has "no business or personal connection to the District of Columbia," and (4) has "never engaged in obtaining healthcare in the District of Columbia." *Id*. ¶¶ 9-13.

### B.  Procedural History

On August 8, 2024, Plaintiff initiated this action by filing a complaint and separate motion for leave to proceed *in forma pauperis* (IFP), which was granted on December 5, 2024. Pursuant to 28 U.S.C. § 1915(d) governing IFP proceedings, the U.S. Marshals Service

completed service of process on January 14, 2025, ECF No. 6, and Defendant filed the instant motion to dismiss on February 4, 2025.[2]

On February 5, 2025, the Court issued an order advising Plaintiff of his obligation to respond to Defendant's motion by March 10, 2025, or risk dismissal of the case, ECF No. 9 (*Fox* Order). The day *after* Plaintiff's deadline, he filed a motion to extend the deadline by one week. On April 1, 2025, the Court, by Minute Order, granted Plaintiff's motion and set a deadline of April 11, 2025, but added that his excuse based on activity in "concurrent litigation" is not good cause for granting an extension in this case. On the due date, Plaintiff filed another motion to extend the deadline, which the Court granted with the caveat that absent his filing of a response by the new deadline of July 7, 2025, Plaintiff could suffer dismissal of the case based solely on Defendant's assertions supporting the motion to dismiss. *See* Min. Order (May 31, 2025). Seemingly unconcerned, Plaintiff has moved again for an extension of time to address Defendant's motion, asserting reasons of dubious relevance to this case. *See* Def.'s Opp'n to Pl.'s Mot. for an Ext. of Time, ECF No. 14 at 5-8 (arguing persuasively that "Plaintiff's latest [m]otion continues a pattern of procedural abuse, delay and obfuscation" that is prejudicial to Defendant).

### III.   LEGAL STANDARD

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so

---

[2] Because a plaintiff proceeding IFP "is not held responsible for a delay attributable to the Court's review of the *in forma pauperis* application and the Clerk's internal processing of his papers," *Davis v. Vilsack*, 880 F. Supp. 2d 156, 161 n.6 (D.D.C. 2012) (quoting *Johnson v. Interstate Mgmt. Co., LLC*, No. 11–cv–1702, 2012 WL 2552777, at *3 (D.D.C. July 3, 2012), Defendant's motion premised on the timeliness of service, *see* Def.'s Mem. at 14, is unavailing.

that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). Although a federal court typically "first resolves doubts about its jurisdiction over the subject matter," there is "no unyielding jurisdictional hierarchy" precluding priority to the "personal jurisdiction inquiry." *Id*. at 578. On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the "burden of establishing a factual basis for the exercise of personal jurisdiction over [each] defendant." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); Fed. R. Civ. P. 12(b)(2); *see also Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) ("a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts") (cleaned up)). The Court resolves factual disputes in the plaintiff's favor "[w]hen deciding personal jurisdiction without an evidentiary hearing," but the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (cleaned up). In addition to the pleadings, the Court may consider other evidence, such as affidavits. *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

Plaintiffs must establish that the Court has personal jurisdiction through either general jurisdiction or specific jurisdiction. *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888-89 (D.C. Cir. 2021). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Id*. at 889 (cleaned up). Specific jurisdiction is narrower and "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. at 888 (cleaned up). The Court's exercise of specific jurisdiction must satisfy the Due Process Clause of the U.S. Constitution and, in this case, the District of Columbia's long-arm statute. *GTE New Media Servs. Inc. v. BellSouth*

5

*Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Thus, "a plaintiff must show 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

## IV. ANALYSIS

Defendant argues that this Court lacks both general and specific jurisdiction. *See* Def.'s Mem. at 9-13. The Court agrees.

### A.  General Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Erwin-Simpson*, 985 F.3d at 888 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S.Ct. 746, 749 (2014). In this action invoking the diversity statute, *see* Compl. at 3, "the federal district court's personal jurisdiction over the defendant is coextensive with that of a District of Columbia court." *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004). A "District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining [her] principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. It is undisputed that Defendant lives in Virginia, and "[t]he place where a [person] lives" is generally "taken to be [her] domicile[.]" *District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941). In addition, Defendant is not being sued for a business practice. Therefore, the Court cannot assert general jurisdiction over her.

### B.  Specific Jurisdiction

As relevant here, the District of Columbia's long-arm statute permits a court to "exercise personal jurisdiction over a person" when "a claim for relief aris[es] from the person's . . . causing tortious injury in the District of Columbia by an act or omission in the District of

6

Columbia," D.C. Code § 13–423(a)(3), or "by an act or omission outside the District of Columbia if [s]he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia," *id*. § 13–423(a)(4). Unlike general jurisdiction, specific jurisdiction "covers defendants less intimately connected with a State, [and] only as to a narrower class of claims." *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017, 1024 (2021). Specific jurisdiction "requires 'a relationship among the defendant, the forum, and the litigation,' " *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020) (citation omitted), and the "claims 'must arise out of or relate to the defendant's contacts' with the forum," *Ford,* 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017)). In other words, there must exist "a relationship among the defendant, the forum, and the litigation such that the defendant's suit-related conduct create[s] a substantial connection with the forum." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (cleaned up).

Contrary to Plaintiff's "belief" that Defendant "works in DC and has a persistent course of action engaging in obtaining healthcare in DC," Compl. at 3, Defendant attests to having "no business or personal connection to the District of Columbia" and to never "obtaining healthcare" in the District. Pl.'s Aff. ¶¶ 12, 13. Moreover, the asserted claims arise from and relate to the criminal proceedings in Massachusetts. Thus, "there is no plausible connection to the District of Columbia, much less a 'substantial' one, to support this Court's asserting specific jurisdiction over Defendant." *Merchia*, 2024 WL 5186612, at *5.

### C. Defendant's Request for Sanctions

Citing Plaintiff's history of filing jurisdictionally defective complaints in this district,

7

Defendant posits that the Court should impose sanctions on Plaintiff under its inherent power to protect the integrity of the courts and to prevent abuses of the process. *See* Def.'s Mem. at 14-16. Because this is the first such case against Defendant, and the proceedings have ended, the Court denies the request. *See Smith v. Scalia*, 44 F. Supp. 3d 28, 46 (D.D.C. 2014), *aff'd*, No. 14-5280, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2025) (per curiam) (restrictions on litigants to protect the court's integrity and processes "should remain very much the exception to the general rule of free access to the courts and the use of such measures against *pro se* plaintiffs should be approached with particular caution.") (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988) (internal quotation marks omitted)).

That said, the Court recognizes a pattern of Plaintiff bringing cases *in forma pauperis* that have no connection to this judicial district. Although the Court declines to impose sanctions in this case, it will seriously consider sanctions in any similarly styled new case Plaintiff brings that may include an injunction barring him from proceeding *in forma pauperis* in this district court, *see Hurt v. Social Security Admin.*, 544 F.3d 308 (D.C. Cir. 2008), filing a new civil action without leave of court, *see Smith*, 44 F. Supp. 3d at 46-48, or both.

## CONCLUSION

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over Defendant and thus grants her motion to dismiss. Because Defendant was never "subject to" this Court's jurisdiction, however, the "case must be dismissed without prejudice." *Shatsky*, 955 F.3d at 1038 (citations omitted). A separate order accompanies this Memorandum Opinion.

_____/s/_____
RUDOLPH CONTRERAS
United States District Judge

Date: September 29, 2025